STEIN & NIEPORENT LLP
1441 Broadway, Suite 6090
New York, NY 10018
(212) 308-3444 Main
(212) 836-9595 Fax
www.steinllp.com

David Stein: DSTEIN@STEINLLP.COM
(admitted in NY, NJ, PA, DC, IL)

David Nieporent: DNIEPORENT@STEINLLP.COM
(admitted in NY, NJ)

August 30, 2023

**VIA ECF**

Hon. James L. Cott, U.S.M.J.
United States District Court
Southern District of New York
500 Pear Street, Room 1360
New York, NY 10007

**Re: <u>Chuchuca, et al. v. Fitzcon Construction G.C. Inc., et al.</u>**
***Docket No. 20-cv-2178 (RA)(JLC)***

Dear Magistrate Judge Cott:

We represent four named and eight opt-in plaintiffs in the above-captioned matter and submit this letter to the Court so that the Court may assess and approve the agreement reached by the parties to settle this matter. The Settlement Agreement is being submitted contemporaneously with this letter as Exhibit A,[1] and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter given the circumstances, and was negotiated in arm's length negotiations.

As Your Honor may recall, we previously submitted this document for the Court's approval several weeks ago; however, at the time we had been unable to reach two of the plaintiffs, and Your Honor directed us to re-submit the document, fixing a couple of omissions and providing authority to the Court as to how the Court could approve the Agreement without those signatures. We are pleased to report that we were finally able to reach the two remaining plaintiffs, and we are therefore today submitting a <u>fully</u> executed Settlement Agreement, with the signatures of all twelve plaintiffs. For the convenience of the Court, we will repeat below the arguments previously submitted to explain why the parties' agreement should be approved and the case dismissed.

<u>Background</u>

The named plaintiffs filed their complaint in this matter on March 11, 2020; over the course of the next six months, eight other individuals filed consents to become party

[1] The Settlement Agreement provides, as security for plaintiffs given the extended payment plan, that the individual defendants cannot sell or convey certain properties they own until the payments are made. However, because these involve matters of personal privacy, at defendants' requests the addresses of those properties have been redacted from this public filing. In all other respects Exhibit A reflects the Settlement Agreement.

plaintiffs under the Fair Labor Standards Act ("FLSA"). The complaint asserts causes of action pursuant to the FLSA and the New York Labor Law ("NYLL") for unpaid overtime pay, as well as claims solely under the New York Labor Law for failure to provide wage notices and failure to provide wage statements.

Plaintiffs alleged that they worked for defendants as construction workers (carpenters and rebar workers) for varying periods of time from March 2017 through March 2020. They were employed at various construction sites in New York City. Although they all worked slightly different schedules, they said that they typically worked 10-12 hour days, five days a week, as well as roughly 8 hour days on weekends. As a result, they worked between 50 and 70 hours per week. They were paid on an hourly basis, at rates ranging from $17 per hour at the low end to $38 at the high end, but most were paid in the mid-$20 range. They were paid straight pay for all of their hours worked. In addition, they received neither wage notices when they were hired nor paystubs with their pay. Based on these facts, plaintiffs estimated their damages as follows, *if they were able to prevail at trial on all of their claims*:

| **Client** | **OT** | **Liquidated** | **WTPA** | **Total** |
|---|---|---|---|---|
| Freddy Chuchua | $51,000 | $51,000 | $10,000 | $112,000 |
| Luis Dario Guartan | $49,000 | $49,000 | $10,000 | $108,000 |
| Adrian Guzman | $41,000 | $41,000 | $10,000 | $92,000 |
| Herlindo Soriano de la Rosa | $14,000 | $14,000 | $10,000 | $38,000 |
| Porfirio Rosas | $8,500 | $8,500 | $10,000 | $27,000 |
| Jorge Curillo | $34,000 | $34,000 | $10,000 | $78,000 |
| Juan Lituma | $21,000 | $21,000 | $10,000 | $52,000 |
| Boliva Bermejo | $118,000 | $118,000 | $10,000 | $246,000 |
| Alfredo Varela | $6,800 | $6,800 | $10,000 | $23,600 |
| Mario Lopez Vazquez | $42,000 | $42,000 | $10,000 | $94,000 |
| Ivan Bonilla | $45,000 | $45,000 | $10,000 | $100,000 |
| Byron Espinoza | $27,000 | $27,000 | $10,000 | $64,000 |
| | | | | $1,034,600 |

Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties[2] agreed to settle plaintiffs' claims against the remaining defendants for a total of $135,000. (Each plaintiff will receive a share of this figure pro-rated based on the above estimated damage calculations, as specified in the Agreement.) While the final settlement amount is

[2] For the purposes of this letter, all references to "the parties" refer to plaintiffs and the Fitzcon defendants, Fitzcon Construction/Ren Corp., Ronan Fitzpatrick, and Cornelius O'Sullivan.

significantly less than plaintiffs' maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* risks attendant with continuing the litigation.

Plaintiffs would — in their view — have had little difficult establishing damages; the Fitzcon defendants had no records relating to plaintiffs' work, and did not claim to know any particular plaintiff's work history. However, liability was another story. Although plaintiffs prevailed on defendants' summary judgment motion, plaintiffs would have borne the burden at trial of proving that defendants actually were their employers. There was no paperwork to establish that plaintiffs actually were employees of defendants — indeed, the limited paperwork suggested that plaintiffs may have worked for two other entities (entities which ultimately defaulted in this case). To be sure, plaintiffs could potentially have shown that those entities were joint employers with defendants, but it was most certainly not guaranteed. And of course if plaintiffs could not establish that the Fitzcon defendants were their employers, plaintiffs would recover nothing at trial.

Moreover, even if plaintiffs did prevail on the employer issue, they would have had to try to collect. Fitzcon is no longer operating, making such efforts particularly challenging. Moreover, financial records supplied by defendants for the purposes of settlement negotiations did not make plaintiffs sanguine about the ability to collect on a larger judgment. And, indeed, defendants required an extended payment plan just to pay the amount that the case settled for. Plaintiffs have already waited years to put this case behind them, and did not relish the idea of pursuing a piece of paper that they would never be able to convert into monetary value. (Not to mention the additional expenses they would need to incur to try the case, such as costs for translators, and trial. By agreeing to settle at this juncture, plaintiffs were able to avoid those costs and avoid trial delays. Thus, plaintiffs decided to accept the Fitzcon defendants' offer.

<u>FLSA Settlement Approval</u>

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.* at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory

rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co*., 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiffs suggest that they weigh in favor of settlement approval. Although the settlement amount is only 13% of plaintiffs' maximum possible recovery (including liquidated damages), it is appropriate given the risks of the case, as described *supra*. Settlements which involve low percentages of potential recovery are approved when the specific risks of the case dictate their appropriateness. *See, e.g., Penafiel v. Babad Management Co., LLC,* 2018 WL 1918613, at *2 (S.D.N.Y. Apr. 19, 2018)(recovery of 15% of total damages reasonable given risks posed by defendants' evidence); *Abreu v. Glenda Food Corp*., 2018 WL 2388532, at *2 (S.D.N.Y. May 25, 2018)(recovery of 13% of total damages reasonable given defendants' strong defenses and possible exempt status of plaintiff); *Aguilar v. N & A Prods. Inc.*, 2019 WL 5449061, at *2 (S.D.N.Y. Oct. 24, 2019)(6% of claimed damages reasonable given arm's length bargaining and potential barriers to any recovery); *Cegueda-Juarez v. Cleanwear USA 2, Inc*., 2019 WL 5485253, at *2 (S.D.N.Y. Oct. 25, 2019)(8.4% of maximum possible recovery reasonable given significant fact issues and possible defense that FLSA does not apply); *Palma Flores v. M Culinary Concepts, Inc.,* 2019 WL 6683827, at *1 (S.D.N.Y. Dec. 6, 2019)(6.98% of the alleged maximum recovery amount reasonable given litigation risks posed by defendants' records). And although this settlement agreement calls for installment payments, plaintiffs are protected by a confession of judgment for 200% of the settlement amount, as well as an agreement that defendants will not convey their real property until the installments are fully paid.

The settlement will also enable the parties to avoid the delay, burdens and expenses of further litigation — namely, trial — as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp*., 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc*., 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiffs are experienced wage-and-hour litigators, and because extensive settlement negotiations in this case were presided over by the Court, Your Honor has firsthand knowledge that the negotiations were conducted on

an arm's length basis. Prior to entering into the settlement agreement, plaintiffs they thoroughly considered the risks and benefits of continuing the litigation. And before agreeing to this settlement, plaintiffs obtained and reviewed financial records from defendants to analyze the collectability issue. The Settlement Agreement reflects the conclusion on the part of experienced counsel for plaintiffs that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants, so there is no risk they will be subject to the same treatment in the future. Indeed, Fitzcon no longer appears to be a going concern. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out of pocket expenses of $2,632.60 (filing fee, service of process, deposition costs, and interpreter fees)[3], and will retain 1/3 of the net settlement (i.e., $44,099.13) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

Moreover, it represents approximately 1.19 times our lodestar, a multiplier routinely approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

---

[3] The Court can take judicial notice of the filing fee; receipts for the other expenses are attached as Exhibit C.

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our full lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[4] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $425 | 36.2 | $14,935.00 |
| David Nieporent | Senior Associate/Partner | $325 | 68.5 | $22,197.50 |
| **TOTAL** | | | **104.7** | **$37,132.50** |

A copy of our updated time records, maintained contemporaneously, is attached in support of these figures as Exhibit B. I am a founding partner of Stein & Nieporent LLP, as well as its predecessor Samuel & Stein which filed this case, and I have been counsel of record in more than 350 federal wage-and-hour cases in New Jersey and New York. I have been continuously practicing law since 1990. I have been admitted to practice in the state of New York since the year 2000, and have been admitted in the states of Illinois, Pennsylvania, New Jersey, and the District of Columbia. My practice focused on Fair Labor Standards Act and New York Labor Law unpaid wages lawsuits almost exclusively since 2008 (although less so since the pandemic), including trying several federal wage and hour cases to verdict and serving as lead counsel on a multi-million dollar federal wage and hour collective and class action. In addition to being admitted in the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. David Nieporent is a founding partner at Stein & Nieporent LLP and was a senior associate at Samuel & Stein. He has worked with me on hundreds of federal wage- and-hour cases. He has been practicing law since admission in the state of New Jersey in 2001, and has been admitted in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation — although that has also diminished somewhat since the pandemic — and he has second chaired several successful wage and hour trials in federal court. In addition to his two state court admissions, he has been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation").

[4] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125. We generally bill at half our regular rate (or for just one attorney) if both of us participate in a proceeding.

And, indeed, we have been awarded fees of precisely the above rates by Judge Nathan in *Vasquez et al. v. NS Luxury Limousine Service Ltd. et al.*, 2022 WL 377378 (S.D.N.Y. Feb 8, 2022), by Magistrate Judge Netburn in *Solano et al. v. Andiamo Café Corp.*, 2021 WL 2201372 (S.D.N.Y. June 1, 2021), and in *Medina Baca et al. v. NB General Construction Corp., et al.*, 20-cv-4701(CS) [Docket Entry 18](December 10, 2020), and in the past were awarded fees of $400 and $325 by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016); by Judge Bricetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018); by Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 2018 WL 8996336 (September 28, 2018); by Judge Oetken in *Zhu v. Salaam Bombay, Inc.*, et al., 2019 WL 76706 (January 2, 2019); and by Judge Daniels in *Martinez et al. v. 2009 Bamkp Corp. et al.*, 2019 WL 7708607 (S.D.N.Y. December 10, 2019), *report and recommendation adopted by* 2020 WL 409691 (S.D.N.Y. January 23, 2020)

And in the Eastern District, where the rates are a bit lower, we have been awarded comparable fees; for example, Judge D'Arcy Hall recently awarded us those rates. *Lopez et al. v. Ki Moon Restaurant Inc., et al.*, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted by* 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021), as did Judge Brodie in *Pena v. Super Economic One Way Supermarket Corp., et al.*, 2021 WL 4755603, at *3 (E.D.N.Y. Sept. 8, 2021), *report and recommendation adopted by* 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021). And in the past we have been awarded fees of $375 and $325 in wage and hour cases in this district. *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et al.*, 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Respectfully submitted,

David Stein

Enc.

cc: Jason Finkelstein. (via ECF)